**AMAZON.COM LLC, Plaintiff,**

v.

**Kenneth R. LAY, in his official capacity as Secretary of the North Carolina Department of Revenue, Defendant.**

**Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, and Cecil Bothwell, Plaintiffs–Intervenors,**

v.

**Kenneth R. Lay, in his official capacity as Secretary of the North Carolina Department of Revenue, and Amazon.com, LLC, Defendants in Intervention.**

**Case No. C10–664 MJP.**

United States District Court,
W.D. Washington,
at Seattle.

Oct. 25, 2010.

Elizabeth J. Soja, Laura R. Handman, Robert G. Scott, Jr., Davis Wright Tremaine, Washington, DC, Steven P. Caplow, Davis Wright Tremaine, Seattle, WA, for Plaintiff.

Aden J. Fine, American Civil Liberties Union, New York, NY, Katherine Lewis Parker, ACLU of North Carolina Legal Foundation, Raleigh, NC, Sarah A. Dunne, ACLU of Washington, Venkat Balasubra-mani, Focal PLLC, Seattle, WA, for Plaintiffs–Intervenors.

Kay Linn Miller Hobart, Tiare B. Smiley, North Carolina Department of Justice, Raleigh, NC, Krista Kay Bush, Michael D. McKay, Thomas Matthew Brennan, McKay Chadwell, Seattle, WA, for Defendant.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT LAY'S MOTIONS TO DISMISS

MARSHA J. PECHMAN, District Judge.

The matter comes before the Court on Plaintiff Amazon.com LLC's ("Amazon") motion for summary judgment (Dkt. No. 44), Defendant Kenneth R. Lay's motion to dismiss Plaintiff's complaint (Dkt. No. 43), and motion to dismiss Plaintiffs–Intervenors' complaint in intervention (Dkt. No. 64). Having reviewed the motions, Intervenors' memoranda in support of the motion for summary judgment (Dkt. No. 48), the responses (Dkt. Nos. 52, 53, 65), Intervenors' memorandum in support of Plaintiff's opposition (Dkt. No. 51), the replies (Dkt. Nos. 54, 56, 67), the relevant filings in the record, and having heard oral argument on all three motions on October 13, 2010, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's motions to dismiss.

### Background

Amazon.com LLC and the North Carolina Department of Revenue ("DOR") have long disputed whether Amazon must collect and remit North Carolina sales and use taxes. (Woodard Decl. ¶ 4.) Amazon has conducted nearly 50 million transactions with North Carolina residents from August 1, 2003 to February 28, 2010, apparently without collecting or remitting North Carolina sales and use taxes. (Gal-

breath Decl. ¶ 3.) Amazon and the DOR are presently locked in a dispute that implicates the First Amendment rights of Amazon's customers, including the Intervenors.

As part of an audit of Amazon, the DOR, whose secretary is Defendant Lay, sent a request on December 1, 2009 to Amazon seeking " 'all information for all sales to customers with a North Carolina shipping address by month in an electronic format for all dates between August 1, 2003, and February 28, 2010.' " (Complaint ¶ 26.) Notably, the request was made as part of DOR's investigation of Amazon's tax liability, not its customers' tax liability. (See First Woodard Decl. ¶ 17; Dkt. No. 43 at 17.) In response, Amazon provided the DOR with "detailed information about millions of purchases made by North Carolina customers during the relevant time period." (Id. ¶ 27.) Amazon provided the order ID number, seller, ship-to city, county, postal code, the non-taxable amount of the purchase, and the tax audit record identification. (Id.) In addition, Amazon provided the Amazon Specific Identification Number ("ASIN") for every purchase, a number which permits access to the specific and detailed description of the product. (Id. ¶ 28.) Amazon identifies products in its catalog and maintains its sales records using ASIN numbers, rather than more generic product codes. (Galbreath Decl. ¶ 8.) Collectively, this information permits the DOR to learn of the "title and description of every book, DVD, music selection, or other item purchased by the customer." (Compl. ¶ 28.) Amazon did not include the name, address, phone number, e-mail address or other personally identifiable information of any customer. (Id. ¶ 29.)

On March 19, 2010, the DOR requested Amazon provide the "Bill to Name; Bill to Address (Street, City, State, and Zip); Ship to Name; Ship to Address (Street); [and] Product/item code or description."

(Compl. ¶ 31; Dkt. No. 45 at 11.) The DOR reiterated its request for "all information for all sales to customers with a North Carolina shipping address." (Dkt. No. 45 at 11.) The DOR threatened that it would file a summons pursuant to North Carolina General Statute § 105–258 if Amazon did not comply. (Id.) In response, on April 19, 2009, Amazon filed a complaint in this Court and sent a letter to DOR explaining that it wished not to violate its customer's privacy rights by disclosing any personal identifiers. Amazon maintains that if the DOR obtains the information it seeks, it will possess all information necessary to know the expressive content of all purchases from Amazon by individual North Carolina residents. (Compl. ¶ 34.)

After Amazon filed its complaint, the DOR sent a letter explaining that it "is *not* seeking information regarding the titles of books and CDs purchased by North Carolina customers." (Dkt. No. 45 at 17 (emphasis in original).) The DOR explained that the information "is not required in order for the Department to calculate the amount of sales or use tax properly due the State." (Id.) The DOR stated that it only requested "the name and bill to and ship to address for all sales to customers with a North Carolina shipping address" and "a general product code or description, for example, 'book.' " (Id.) Amazon contends that it only keeps product information in ASIN format. (Galbreath Decl. ¶ 8.) However, beginning in June 2008, Amazon developed a five-digit product tax code that includes a more generic product description, such as "general books," digital books, "candy," or "general food." (Second Woodard Decl. ¶ 11.) The DOR obtained information in this format from Amazon that was responsive to its requests. (Id.)

On June 4, 2010, the DOR sent a third document request to Amazon. (Dkt. No.

45 at 18.) The request sought "additional information, as well as information previously requested and not provided about the business operations and tax reporting of Amazon.com." (*Id.*) DOR offered to return the initial data Amazon sent, including the ASIN, in exchange for more general product coder information. (Zapolsky Decl. ¶ 21; Woodard Decl. ¶ 16.) However, the DOR maintains that it "cannot simply return the disks provided because they contain significant additional information that the Department requires in order to determine Amazon's and its customers' North Carolina sales and use tax liability." (Woodard Decl. ¶ 6.) The DOR now states that it has removed the data Amazon gave it from its computers, but that the CDs with the information are now stored in the Secretary Lay's desk.[1] (Fourth Woodard Decl. ¶¶ 6–7; Lay Decl. ¶ 4.)

To calculate the proper sales tax, the DOR "routinely requires" general information about the product, the name and address of purchaser, the price, and the freight charges. (Woodard Decl. ¶ 8.) The name of the individual permits the DOR to determine if any exceptions to the sales or use tax apply. (*Id.* ¶ 6.) Absent the name of the buyer, the DOR can calculate Amazon's tax liability with only the product description, the county in which the sale was made, and the price. (Woodard Decl. ¶ 15.) However, the DOR maintains that it cannot calculate the correct amount of Amazon's tax liability (including any exemptions) without the names and specific addresses of the purchasers and that it seeks always to "arrive at the correct amount of liability." (Second Woodard Decl. ¶ 7; Woodard Decl. ¶ 8.) Nevertheless, the DOR has stated that it can and "would assess taxes at the highest rate and it would then be up to Amazon to chal-

lenge the assessment and to establish that the exemptions or lower tax rate applied to some products." (Woodard Decl. ¶ 15.)

Amazon pursues two main claims: (1) that the First Amendment and Article 1, Sections 4 and 5 of the Washington State Constitution bar the revelation of the identities of its customers' purchases and any specifics as to the content of the purchases; and (2) that the Video Privacy Protection Act, 18 U.S.C. § 2710, bars compliance with the DOR's March 2010 request. (Compl. ¶¶ 40–56.) Amazon seeks a declaration "that, to the extent the March Information Request demands that Amazon disclose its customers' names, addresses or any other personal information, it violates the First Amendment and 18 U.S.C. § 2710." (Compl. at 14.) Amazon also asks for the same declaration with respect to the Washington State Constitution. (*Id.*)

Represented by the American Civil Liberties Union, Jane Does 1–6 and Cecil Bothwell (collectively "Intervenors") obtained the Court's permission to intervene in this action and filed a complaint in intervention. (Dkt. No. 58; Dkt. No. 61.) The Intervenors allege the same basic facts, but add personal information regarding purchases they have made on Amazon and the fears they have that the government may track their purchases and their fear of buying more materials online. They pursue two claims: (1) one pursuant to the First and Fourteenth Amendments; and (2) one pursuant to the Video Privacy Protection Act. (Dkt. No. 61 at 29–31.)

The relief the Intervenors seek is quite broad. Intervenors seek three forms of declaratory relief: (1) a declaration that the DOR's "demand for personally identifiable purchase records violates the free

---

1. At oral argument, counsel for Defendant advised that Mr. Lay's term as Secretary was due to expire within one week.

speech and privacy rights of Intervenors and other individuals in North Carolina"; (2) a declaration that the "DOR's policy and practice of issuing information document requests to out-of-state websites and other businesses that encompass constitutionally protected information violates the free speech and privacy rights of Intervenors and other individuals in North Carolina," and (3) a declaration that the "DOR's demand for the disclosure of personally identifiable customer information from Amazon concerning sales of video or audiovisual materials violates the Video Privacy Protection Act, 28 U.S.C. § 1710[sic]." (*Id.* at 32.)

Intervenors also seek three forms of injunctive relief. They desire an injunction: including but not limited to, a permanent injunction:

> prohibiting DOR from requesting that Amazon provide personally identifiable customer information or detailed information about the specific items purchased by Amazon customers; prohibiting DOR from receiving that information from Amazon; and ordering DOR to destroy or return any records or past uses of such records that it already has or may obtain containing detailed information about the items shipped to Amazon's North Carolina customers.

(*Id.* at 32.) Intervenors seek a second injunction "prohibiting DOR from issuing information document requests that encompass constitutionally protected information about individuals' expressive and private activities; and ordering DOR to destroy or return any information it receives about individuals' expressive and private activities." (*Id.*) Intervenors lastly seek:

> appropriate injunctive relief, including, but not limited to, a permanent injunction: prohibiting Amazon from disclosing personally identifiable customer in-

formation concerning sales of video or audiovisual material to DOR absent the receipt of informed, written consent from the affected customers or a warrant, grand jury subpoena, or court order permitting such disclosure; prohibiting DOR from receiving personally identifiable customer information concerning sales of video or audiovisual material absent the receipt of informed, written consent from the affected customers or a warrant, grand jury subpoena, or court order permitting such disclosure; and prohibiting DOR from issuing future information document requests that call for the disclosure of personally identifiable customer information concerning the sales of video or audiovisual material absent the receipt of informed, written consent from the affected customers or a warrant, grand jury subpoena, or court order permitting such disclosure.

(*Id.* at 33.)

On July 15, 2010, Amazon filed a motion for summary judgment three days after the DOR filed a motion to dismiss. (Dkt. Nos. 43, 44.) The ACLU filed amicus briefs in support of Amazon in both motions. (Dkt. Nos. 48, 51.) On August 16, 2010, the Intervenors filed their complaint in intervention, which the DOR moved to dismiss on September 2, 2010. (Dkt. Nos. 61, 64.) The Court heard oral argument on October 13, 2010 on all three motions.

### Analysis

The Court addresses the jurisdictional attacks made by the DOR before turning to the merits of Amazon's motion for summary judgment. The DOR challenges the Court's jurisdiction over both Amazon's and the Intervenors' complaints. It asserts that: (1) the claims are not ripe because no harm has been suffered and because no tax summons has issued; (2) the Tax Injunction Act bars the proceed-

ings; and (3) comity requires the Court not to exercise jurisdiction. The DOR also makes a jurisdictional attack to the Intervenors' Video Privacy Protection Act claim, which the Court addresses before its analysis of the merits of Amazon's claims.

A. *Standard*

On a motion to dismiss under Rule 12(b)(1), "the district court is not confined by the facts contained in the four corners of the complaint—it may consider facts and need not assume the truthfulness of the complaint." *Americopters, LLC v. Fed. Aviation Admin.,* 441 F.3d 726, 732 n. 4 (9th Cir.2006). The Court "need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000).

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there are no genuine issues of material fact for trial and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

B. *Ripeness*

DOR seeks dismissal on the theory that Amazon and the Intervenors have suffered no harm and their claims are not ripe. This argument is not correct.

"[A] reasonable threat of prosecution, for standing purposes, dispenses with any ripeness problem." *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1156 (9th Cir.2000). "Courts have long recognized that [o]ne does not have to await the consummation of threatened injury to obtain preventive relief." *California Pro–Life Council, Inc. v. Getman,* 328 F.3d 1088, 1094 (9th Cir. 2003) (quotation omitted). This is so "[p]articularly in the First Amendment-protected speech context, [where] the Supreme Court has dispensed with rigid standing requirements." *Id.* As the Ninth Circuit recently held, "[i]n the context of First Amendment speech, a threat of enforcement may be inherent in the challenged statute, sufficient to meet the constitutional component of the ripeness inquiry." *Wolfson v. Brammer,* 616 F.3d 1045, 1059 (9th Cir.2010) (citing *Arizona Right to Life Political Action Comm. v. Bayless,* 320 F.3d 1002, 1006 (9th Cir.2003)).

Here, Amazon seeks to avoid disclosing the names of its North Carolina customers on the grounds that doing so would violate the customers' First Amendment rights. This is so, Amazon alleges, because the DOR already possesses detailed information about Amazons' customers' purchases of expressive material, such that any revelation of identities would permit the government to peer into and track North Carolina residents' literary, audio, and visual habits. DOR continues to request information that threatens these rights and it has suggested it will try to enforce the tax laws against individuals,

such as the Intervenors, if Amazon does not comply. (Woodard Decl. ¶ 17.) As the declarations from the Intervenors make clear, the fear of disclosure of their reading, watching, and listening habits poses an imminent threat of harm and chill to the exercise of First Amendment rights. (Dkt. Nos. 24–29, 48–1.) There is thus sufficient threat of enforcement to make the matter ripe for adjudication. *See Getman*, 328 F.3d at 1094. The DOR's argument that the claims are not ripe because no tax summons has issued ignores that First Amendment claims are generally ripe "when the threatened enforcement effort implicates First Amendment rights...." *Bayless*, 320 F.3d at 1006. The claims are ripe.

### C. *Tax Injunction Act as to Amazon*

The DOR argues that Amazon's complaint violates the Tax Injunction Act and that the Court lacks jurisdiction. The Court disagrees.

The Tax Injunction Act precludes jurisdiction where: (1) the court is asked to "enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law"; and (2) "where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Both elements must be satisfied for the Act to apply.

■ The Tax Injunction Act bars district courts from "issuing an injunction enjoining the collection of state taxes" and from "issuing a declaratory judgment holding state tax laws unconstitutional." *California v. Grace Brethren Church*, 457 U.S. 393, 408, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). The Supreme Court has held the Act "proscribes interference only with those aspects of state tax regimes that are needed to produce revenue—i.e., assessment, levy, and collection." *Hibbs v. Winn*, 542 U.S. 88, 105 n. 7, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004). In *Hibbs* the Court affirmed jurisdiction over a suit brought by Arizona taxpayers who sought to enjoin the state's use of tax credits for religious schools under the Establishment Clause. The Court held that a suit "not seeking to stop the collection (or contest the validity) of a tax imposed on plaintiffs ... [was] outside" the Act's purview. *Id.* at 104, 124 S.Ct. 2276. The Court also held that "assessment" is the official recognition of liability that triggers the levy and collection of state taxes. *Id.* at 101–02, 124 S.Ct. 2276. The Court noted that prior Supreme Court cases finding the Act applicable "involved a plaintiff who mounted federal litigation to avoid paying state taxes (or to gain a refund of such taxes)." *Id.* at 106, 124 S.Ct. 2276.

■ The *Hibbs* Court provides a two-step process to assess the application of the Act. First, the Court is to consider closely the nature of the relief requested. *Hibbs*, 542 U.S. at 99, 124 S.Ct. 2276. Second, the Court is to consider whether the relief will enjoin, suspend, or restrain the assessment, levy, or collection of state taxes. *Id.*

As an initial matter, the Court makes clear its inquiry focuses solely on whether the relief Amazon requests will impede the DOR in assessing or collecting a tax from Amazon. This narrow focus is the result of the fact the DOR made its request of Amazon solely in the context of a tax audit of Amazon, not its customers. (*See* Woodard Decl. ¶ 17; Dkt. No. 43 at 17.) Any inquiry as to whether North Carolina residents owe taxes is hypothetical. (Dkt. No. 43 at 16; Woodard Decl. ¶¶ 11–12) (reaffirming that the audit is of Amazon only), ¶ 17 (stating that "the Department is also collecting use tax data *in the event* a decision is made to allocate resources to assess use taxes against North Carolina customers ..." (emphasis added).)

The relief sought by Amazon does not require the Court to enjoin, suspend, or restrain the assessment, levy or collection of tax. Amazon has provided DOR with information as to every sale within the time period requested, including the name of the city, county, and postal code for each shipment, a detailed description of the product, and the total amount paid. (Zapolsky Decl. at 3–4, ¶ 10; Galbreath Decl. at 2–3, ¶ 7.) According to DOR's own explanation of North Carolina law, this permits it to calculate the tax rate because it possesses the type of good, the county to which the item was shipped, and the date. (Woodard Decl. ¶¶ 4–5, 8.) Amazon's proposed declaratory judgment would exempt Amazon from turning over the "names, addresses or any other personal information" of its customers. (Dkt. No. 1 at 14.) This only implicates DOR's ability to determine whether an exemption applies to any particular transaction that would alleviate some tax burden on Amazon. (Woodard Decl. ¶ 6.) While this may frustrate the DOR's desire to provide a proper calculation of the exact tax owed by Amazon, the DOR has admitted that any lack of names does not impede a tax assessment. The DOR has stated that it can and will impose a tax on Amazon, and that it will simply be up to Amazon to seek a lower tax rate. (Woodard Decl. ¶ 15; Motion to Dismiss at 17 ("In lieu of proceeding with a summons enforcement action, NC Revenue could proceed to issue a sales tax assessment against Amazon, assessing tax on all transactions at the highest right.").) The DOR's stated position moots its argument that the declaratory relief would impede its assessment of Amazon's tax liability-the sole focus of the matter before the Court. The Court DENIES the DOR's motion to dismiss Amazon's complaint under the Tax Injunction Act.

DOR argues that the recent Supreme Court case in *Levin v. Commerce Energy, Inc.,* — U.S. —, 130 S.Ct. 2323, 176 L.Ed.2d 1131 (2010) supports a contrary view. In that case, the Court held the Tax Injunction Act barred a request for declaratory and injunctive relief to stop tax exemptions enjoyed by certain sellers of natural gas on the grounds that it violated the Commerce and Equal Protection Clauses. *Id.* at 2328–29. Such a broad request for relief does not exist here. Amazon's request does not implicate the validity of North Carolina's tax scheme. The requested relief also does not impinge on the assessment or collection of taxes. It is a narrowly-tailored request for relief to avoid turning over information that is unnecessary for the DOR to possess in order to calculate Amazon's tax liability. *Commerce Energy* is distinguishable and does not support the DOR's position.

DOR relies heavily on another case that is distinguishable: *Blangeres v. Burlington Northern, Inc.,* 872 F.2d 327, 328 (9th Cir.1989) (per curiam). In *Blangeres,* a four paragraph per curiam opinion, the court held the Tax Injunction Act barred a suit by employees who sought to enjoin their employer from giving employment records to two state taxing authorities. *Id.* In affirming the applicability of the Tax Injunction Act, the court noted that the taxing authorities wanted this specific information and made a showing that this was the only way to obtain it. Here, however, the DOR's document request to Amazon is not part of an investigation of North Carolina residents' tax liability, and the DOR has not made a showing that its investigation of Amazon is the only way to acquire such information. *Blangeres* does not impact the Court's decision.

The Court does not discuss the adequacy of the state remedies (the Act's second element). However, as explained below, the state law remedy is not adequate. This is an independent reason to deny the DOR's motion to dismiss on this issue.

**D.** *Tax Injunction Act as to Intervenors*

Although some of the Intervenors' requests for relief run afoul of the Tax Injunction Act, the Act does not apply because there is no adequate state remedy. The Court examines the declaratory relief Intervenors seek before looking at the Injunctive relief requested.

The declaratory relief Intervenors seek largely avoids implicating the Tax Injunction Act. The first request asks the Court to find the DOR demand for "personally identifiable purchase records" violates the First Amendment. (Dkt. No. 61 at 32 ¶ a.) This request is similar to Amazon's request and does not impede DOR's ability to assess or collect any taxes due from Amazon. It falls outside the scope of the Act. Similarly, Intervenors' request for a declaration that the personally identifiable information related to audiovisual and video materials is improper does not run afoul of the Tax Injunction Act. (*Id.* at ¶ e.) However, Intervenors' request for a declaration that DOR's policy of requesting information from unnamed out-of-state websites does implicate and potentially hamper DOR's ability to assess and collect its taxes. (*Id.* at ¶ c.) The request is vague and difficult to surmise in scope. In their argument, Intervenors contend that they are only seeking relief from the forced revelation of individuals' names and address in combinations with product purchase information. (Dkt. No. 65 at 14.) Intervenors' actual pleadings, however, do not match their argument. Reading the pleadings liberally, the Court is convinced such a broad and vague request could hamper DOR's ability to assess tax liability in certain instances.

The injunctive relief Intervenors seek largely mirrors the declaratory relief they seek. The first request seeks only to prohibit Amazon from using personally identifiable customer information in the future. (Dkt. No. 61 at 32 ¶ b.) This falls outside the Act. It does not appear to impede any tax assessment of Amazon because DOR already possesses the information needed to assess Amazon. Similarly, the third injunction request does not appear to violate the Act. It seeks to prohibit Amazon from disclosing any personally identifiable customer information regarding video and audiovisual materials in the future without the customers' consent. (*Id.* at 33 ¶ e.) An injunction issued as requested would not impede North Carolina's ability to assess or collect its taxes, as it need only comply with the Video Privacy Protection Act to avoid violating any injunction that might issue as the Intervenors request. However, the second injunctive request is extremely broad and exceeds the scope of this litigation. It seeks to enjoin DOR "from issuing information document requests that encompass constitutionally protected information about individuals' expressive and private activities." (*Id.* at ¶ d.) Unlike Amazon's requested declaratory relief, this request could hamper legitimate future requests made by the DOR in a different context that would impair the DOR's ability to run its tax scheme.

 The mere fact that some of the relief the Intervenors request falls within the Tax Injunction Act's ambit is not fatal to jurisdiction. These claims are not barred by the Act because there is no "plain, speedy and efficient remedy" available in North Carolina. Federal courts "must construe narrowly [this] exception to the Tax Injunction Act." *Grace Brethren,* 457 U.S. at 413, 102 S.Ct. 2498. A "plain, speedy and efficient remedy" requires there to be a "full hearing and judicial determination in which the party may assert federal rights." *May Trucking Co. v. Or. Dep't of Transp.,* 388 F.3d 1261, 1270 (9th Cir.2004) (internal citation and quotation omitted). "For state-court remedies to be 'plain,' the procedures

available in state court must be certain." *Id.* A state remedy "is not plain within the meaning of the Tax Injunction Act ... 'if there is uncertainty regarding its availability or effect.'" *Direct Mktg. Ass'n, Inc. v. Bennett,* 916 F.2d 1451, 1453 (9th Cir.1990) (quoting *Ashton v. Cory,* 780 F.2d 816, 819 (9th Cir.1986)).

Amazon and the Intervenors have demonstrated that they lack a "plain" remedy in North Carolina should a tax summons issue. 28 U.S.C. § 1341. The procedure governing tax summons disputes in North Carolina lacks certainty. North Carolina's Supreme Court recently held that a summons challenge is "a proceeding of a civil nature with its own specialized procedure that supplants the Rules of Civil Procedure." *In re Summons to Ernst & Young, LLP,* 363 N.C. 612, 684 S.E.2d 151, 156 (2009). The process is summary and requires little weighing of evidence. *Id.* A superior court handling such a summons "has the inherent authority to take all actions reasonably necessary to properly administer its duties under N.C.G.S. § 105–258(a)." *Id.* at 154. There is no certainty that constitutional and federal statutory objections can be made or whether the Intervenors could appear as well. The Court notes that the court in *Ernst & Young* permitted a party to intervene, but that decision does not appear to have been grounded in any particular rule or procedure that might be applicable in any future case. *Id.* at 153. The DOR has pointed to no set of procedural rules that are applicable or available for this Court to review. The *Ernst & Young* case suggests that it is simply up to the judge handling the summons to determine whether or not to hear such objections. The DOR argues that the tax summons process is adequate simply because it was modeled after the IRS summons enforcement process, which has been held to be adequate. (Dkt. No. 56 at 7 (citing *Reisman v. Caplin,* 375 U.S. 440, 449, 84 S.Ct.

508, 11 L.Ed.2d 459 (1964)).) This is inadequate to show a plain remedy exists.

Because the Court does not find there to be an adequate state remedy, the Court DENIES the DOR's motion to dismiss on this issue.

### E. Comity Is Not A Bar

DOR also invokes comity as grounds for the Court's lack of jurisdiction. The Court is not persuaded.

 Where state taxes are at issue, federal courts are generally cautioned from passing judgment on the constitutionality of state taxation of commercial activity. *Commerce Energy,* 130 S.Ct. at 2330. Unlike the relief sought in *Commerce Energy,* Amazon and the Intervenors do not ask the Court to rule on the validity of North Carolina's tax scheme. As explained above, Amazon's requests for relief do not require the Court to restrain North Carolina in assessing or collecting a tax from Amazon or to pass judgment on the constitutionality of North Carolina's taxation system. The Court is aware that the Intervenors' request relief that may implicate concerns of comity. The Court will therefore fashion the most appropriately narrow relief possible. The Court DENIES the motions to dismiss on the issue of comity.

### F. Jurisdiction and the Video Privacy Protection Act

The DOR seeks dismissal of both Amazon's and the Intervenors' claims brought under the Video Protection and Privacy Act ("VPPA"). (Dkt. No. 64 at 21.)

The Act makes it illegal for a video tape service provider to disclose "personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b)(1). The Act permits the Court to issue injunctive relief. 18 U.S.C § 2710(c)(2)(D).

In its motion to dismiss, the DOR attacks Amazon's VPPA claim on the grounds that the Tax Injunction Act bars its application. As explained above, that bar does not exist. There is no jurisdictional bar to Amazon's VPPA claim. The Court addresses the merits of the claim below.

■■■ The DOR argues that the Intervenors' VPPA claim is improper because only "video tape service providers" can be liable under the Act and the DOR is not such a provider. (Dkt. No. 64 at 21.) The Court disagrees. The VPPA provides "[a]ny person aggrieved by any act of a person in violation of this section may bring a civil action in a United States district court." 18 U.S.C. § 2710(c)(1). One violation of the section occurs when "[a] video tape service provider ... knowingly discloses, to any person, personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b)(1). The Act can also be violated when personally identifiable information is obtained from a video tape service provider in any manner other than as narrowly provided by the Act. *See id.* § 2710(b)(2). For example, a law enforcement agency can legally obtain video records only if it has a valid warrant. 18 U.S.C. § 2710(b)(2)(C). Without a proper warrant, the agency violates the Act by improperly obtaining the record. A "person aggrieved by any act of [the agency] in violation" of the VPPA could file suit against that agency, which is a "person in violation of [the VPPA]." 18 U.S.C. § 2710(c)(1). The Court is aware that "video tape service providers" are the only person expressly defined as a person who can be liable under the Act. 18 U.S.C. § 2710(b)(1). However, there is no limitation in section (c)(1) that the civil action must only be brought against the video tape service provider. It strikes the Court as logical that suits can be brought against those who receive personally identifiable information in violation of the Act. Had

Congress intended to limit the scope of civil actions it could have, but apparently did not.

■■■ To read the VPPA's civil suit provision as limited to suits against video tape service providers ignores the Act's plain language and its intent to protect disclosure of private information to those who are not providers, but who nonetheless may attempt access the information. The Court agrees with the statutory analysis in *Dirkes v. Borough of Runnemede,* that the purpose of the VPPA is to prevent the disclosure of private information and to allow parties to "bring suit against those individuals who have come to possess ... the private information in flagrant violation of the purposes of the Act." 936 F.Supp. 235, 240 (D.N.J.1996). The Court is aware that the Sixth Circuit has come to an opposite conclusion, but the Court disagrees with the Sixth Circuit's analysis of the plain language of the Act. *See Daniel v. Cantrell,* 375 F.3d 377, 381–82 (6th Cir. 2004). The Court DENIES the DOR's motion to dismiss on this issue.

G. *First Amendment*

Amazon pursues summary judgment as to its First Amendment claim that the DOR's request for all information related to Amazon's sales to North Carolina residents violates the First Amendment. The Court agrees and GRANTS the motion.

■■■■ The First Amendment protects a buyer from having the expressive content of her purchase of books, music, and audiovisual materials disclosed to the government. Citizens are entitled to receive information and ideas through books, films, and other expressive materials anonymously. In the context of distribution of handbills, the Supreme Court held that anonymity "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular." *McIntyre v. Ohio*

*Elections Comm'n,* 514 U.S. 334, 357, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995); *Talley v. California,* 362 U.S. 60, 64, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960) (protecting anonymity in handing out campaign literature). The fear of government tracking and censoring one's reading, listening, and viewing choices chills the exercise of First Amendment rights. In a concurring opinion, Justice Douglas highlighted the deleterious effect of governmental meddling in the reading habits of its citizens: "Some will fear to read what is unpopular what the powers-that-be dislike. When the light of publicity may reach any student, any teacher, inquiry will be discouraged." *United States v. Rumely,* 345 U.S. 41, 57–58, 73 S.Ct. 543, 97 L.Ed. 770 (1953) (Douglas, J., concurring).

Two district courts addressing subpoenas seeking book purchase records have similarly held the First Amendment rights are implicated where the government seeks the disclosure of reading, listening, and viewing habits. In *In re Grand Jury Subpoena to Amazon.com Dated August 7, 2006,* 246 F.R.D. 570 (W.D.Wis.2007), the court held that the government had to show a compelling need to obtain the personal identities and titles of books certain persons purchased through Amazon from a seller suspected of tax evasion. The government served Amazon a subpoena duces tecum seeking the identities of customers of the criminal defendant and information about their purchases. *Id.* at 571. Amazon provided the requested information, except the identities of the purchasers, objecting that the revelation of the purchasers' identities would violate their First Amendment rights. *Id.* at 572. The court agreed. The court barred the government from contacting anyone who did not consent to talking to the government, noting that the First Amendment was implicated where the government might "peek into the reading habits of specific individuals without their prior knowledge or permis-

sion." *Id.* at 572. A similar result was reached by a district court handling a subpoena request to obtain the book purchasing records of Monica Lewinsky. *In re Grand Jury Subpoena to Kramerbooks & Afterwords, Inc.,* 26 Med. L. Rptr. 1599, 1600–01 (D.D.C.1998). The court held that the Independent Counsel investigating President Clinton had to show a compelling interest and sufficient nexus to sustain his request. *Id.*

The DOR relies on a string of inapposite cases that involve the validity of tax summonses generally. None of the cases involved challenges on First Amendment grounds. For example, the DOR invokes *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) as the measure of whether a tax summons is constitutional. While that case did address the validity of tax summonses generally, it has no bearing on a challenge to a tax-related request that implicates the First Amendment. The Court primarily addressed whether a tax summons had to satisfy probable cause, which is not a present concern. *See id.* at 51–58, 85 S.Ct. 248. The cases the DOR cites do not alter the Court's view as to the First Amendment's applicability in this matter.

 Amazon and the Intervenors have established that the First Amendment protects the disclosure of individual's reading, listening, and viewing habits. For example, the Intervenors make uncontroverted statements that they fear the disclosure of their identities and purchases from Amazon to the DOR and that they will not continue to make such purchases if Amazon reveals the contents of the purchases and their identities. (Dkt. Nos. 25–29.) The DOR concedes that the First Amendment protects them from such disclosures. In fact, the DOR has repeatedly stated it does not want detailed information about purchases for fear of implicating the First Amendment. (*See* Dkt. No. 43 at 8.) How-

ever, DOR has consistently requested this very information by reaffirming its broad requests. At the same time, the DOR has also refused to give up the detailed product information about Amazon's customers' purchases. (Woodard Decl. ¶ 16.) The pending request for "all information as to all sales" by Amazon implicates the First Amendment rights of Amazon's customers and the Intervenors.[2] While the DOR states that it could not possibly match the names to the purchases, its promise of forbearance is insufficient to moot the First Amendment issue. *See United States v. Stevens*, —— U.S. ——, 130 S.Ct. 1577, 1591, 176 L.Ed.2d 435 (2010) (stating that the Court "would not uphold an unconstitutional statute merely because the Government promised to use it responsibly"). The Court finds the disclosure of the identities and detailed information as to the expressive content of Amazons' customers' purchases will have a chilling effect that implicates the First Amendment.

■ Given that the DOR's request implicates the First Amendment, the DOR must show "a compelling governmental interest warrants the burden, and that less restrictive means to achieve the government's ends are not available." *United States v. C.E. Hobbs Found.*, 7 F.3d 169, 173 (9th Cir.1993) (setting for the standard for a First Amendment challenge to an IRS summons). There must also be a "substantial relation between the information sought and a subject of overriding and compelling state interest." *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 546, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963) (in the context of a legislative subpoena). The DOR must "actually need[ ] the dis-

puted information." *In re Grand Jury Subpoena to Amazon.com*, 246 F.R.D. at 572.

■ The DOR concedes that it has no legitimate need or use for having details as to North Carolina Amazon customers' literary, music, and film purchases. In spite of this, the DOR refuses to give up the detailed information about Amazon's customers' purchases, while at the same time requesting the identities of the customers and, arguably, detailed records of their purchases, including the expressive content. With no compelling need for both sets of information, the DOR's request runs afoul of the First Amendment. It bears noting, too, that the DOR's requests for information were made solely in the context of calculating Amazon's potential tax liability. Amazon has provided all of the data necessary to determine its tax liability, except any potential tax exemptions. The DOR has failed to articulate the compelling need to calculate these possible exemptions, particularly where it has admitted that it can and will assess Amazon at the highest rate and it would permit Amazon to "challenge the assessment and ... establish that exemptions or lower tax rates applied to some products." (Woodard Decl. ¶ 15.) Even assuming there is a compelling need to calculate Amazon's tax liability inclusive of exemptions, the DOR's requests are not the least restrictive means to obtain the information. The request is overbroad. The Court GRANTS the motion for summary judgment.

## H. *Washington State Constitution*

Amazon makes little mention of the Washington Constitution in its motion, oth-

**2.** The DOR suggested at oral argument that the Court should look to the state of mind of Defendant Lay to intuit that the request is more narrowly than the actual language of the request. This argument is particularly unavailing where counsel admitted that De-

fendant Lay did not draft the request. It is simply implausible that Amazon or any other recipient of a request from the DOR should have to divine the unspoken intent of the Department to comply with a request.

er than to remark that its protections of speech are arguably broader than the First Amendment. (Dkt. No. 44 at 13–14 (citing *JJR Inc. v. City of Seattle,* 126 Wash.2d 1, 8, 891 P.2d 720 (1995)).) The DOR does not respond directly to Amazon's Washington law claim. The Court does not reach this issue, as Amazon has not adequately briefed the issue. The Court does not grant relief under the Washington Constitution.

## I. *VPPA*

Amazon argues that disclosure of personal identifiable information in response to the DOR's request would violate the VPPA. The Court agrees.

Under the VPPA, Amazon qualifies as a "video tape service provider." 18 U.S.C. § 2710(a)(4). The records the DOR seeks include "personally identifiable information," as the VPPA defines that term includes "information which *identifies a person as having requested or* obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). As explained above, Amazon may not disclose records regarding its customer's video or audiovisual purchases except in limited circumstances. 18 U.S.C. § 2710(b). Relevant to this case, Amazon may only disclose the information:

> pursuant to a court order, in a civil proceeding upon a showing of compelling need for the information that cannot be accommodated by any other means, if—(i) the consumer is given reasonable notice, by the person seeking the disclosure, of the court proceeding relevant to the issuance of the court order; and (ii) the consumer is afforded the opportunity to appear and contest the claim of the person seeking the disclosure.

18 U.S.C § 2710(b)(2)(F).

 The DOR's request runs afoul of the VPPA. It requires Amazon to disclose the personally identifiable information about its customers to the government in violation of the Act. The DOR argues that this issue is not ripe because it has not requested specific video titles. (Dkt. No. 52 at 21.) This statement is incorrect. The DOR asked for "all information for all sales," which clearly calls for information about the video titles. (Compl. ¶ 26.) Should the DOR later issue a tax summons, it must show compelling need for the information in order to avoid violating the VPPA. As explained above, the DOR lacks a compelling need for the identities and detailed information about North Carolina Amazon customers' video and audiovisual purchases. The Court GRANTS summary judgment on this issue.

## J. *Scope of Relief*

The nature of the declaratory relief offered by the Court is critical to the ruling. As explained above, the Intervenors seek broad relief that extends beyond the factual and legal dispute before the Court. The Court is aware of the sensitive nature of this case. The declaratory relief issued here is of limited scope and cannot be interpreted to grant Amazon a free pass from complying with any valid tax law of North Carolina or elsewhere.

Amazon seeks "a declaration that, to the extent the March Information Request demands that Amazon disclose its customers' names, addresses or any other personal information, it violates the First Amendment and 18 U.S.C. § 2710." (Dkt. No. 1 at 14 ¶ 1.) This request is notably narrow because it is specifically tied to the March Information Request. The DOR's request sought "all information for all sales" by Amazon to customers in North Carolina. As phrased, the request is overly broad. The Court, however, adds an additional limit to the declaratory relief Amazon proposes. The declaratory relief Amazon re-

quests is valid only as long as the DOR continues to have access to or possession of detailed purchase records obtained from Amazon. Thus, the Court grants a declaratory relief as follows: to the extent the March Information Request demands that Amazon disclose its customers' names, addresses or any other personal information, it violates the First Amendment and 18 U.S.C. § 2710, only as long as the DOR continues to have access to or possession of detailed purchase records obtained from Amazon (including ASIN numbers). Issuing the declaratory relief as phrased does not prohibit the DOR from issuing a new request for information as to only the names and addresses of Amazon's customers and general product information, assuming that DOR destroys any detailed information that it currently possesses. The Court does not issue the second requested declaration because Amazon has not adequately addressed its Washington Constitution claim.

Because the Intervenors have not moved for relief the Court does not issue any of the relief they request in their complaint. The Court notes that much of the declaratory and injunctive relief sought overlaps with the declaratory relief issued by this order. (*See* Dkt. No. 651 at 32 ¶¶ a, b, e, f.) The Court doubts that any broader relief requested would be properly issued on the record developed thus far. (*See id.* ¶¶ c, d.)

### K. *Motion to Strike*

▮ Amazon asks the Court to strike the Third Declaration of H. Alan Woodard submitted with DOR's reply brief to its motion to dismiss. The declaration contains news articles and editorials and new factual assertions. Woodard's declaration does not set out or explain the foundation for his ability to attest to the accuracy of the news articles and the factual assertions made in the declaration. The Court GRANTS the motion and STRIKES the declaration and the articles attached thereto.

▮ Amazon also asks the Court to strike Section IV of DOR's reply brief filed in support of its motion to dismiss where it presents new arguments for the first time. (Dkt. No. 56 at 12.) Arguments cannot be raised properly for the first time on reply. The Court GRANTS the motion and strikes this portion of the briefing. The Court also notes that the argument the DOR pursues, that summary judgment is premature, is untenable. "A party may move for summary judgment at any time." Fed.R.Civ.P. 56(c)(1)(A). The DOR cites *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 961 n. 9 (9th Cir.2009), for the proposition that summary judgment may not be granted before the defendant files an answer. This is a thoroughly incorrect reading of *Jeppesen* and the law. In a footnote, the court in *Jeppesen* reiterated that the lower court could not have granted summary judgment in that case because it was unclear whether any issues of fact were in dispute, in part because the defendant had yet to even answer. The court did not establish a rule that no summary judgment can be filed before an answer is been filed. Here, contrary to the facts in *Jeppesen*, the DOR has filed two motions to dismiss, several declarations, and "does not dispute th[e] general proposition" that Amazon's summary judgment motion "turns on legal issues, not facts." (Dkt. No. 53 at 4.) Having failed to raise a genuine issue of material fact, DOR cannot properly rely on *Jeppesen* and otherwise ignore Rule 56(c)(1)(A).

### Conclusion

The Court DENIES the DOR's two motions to dismiss. The jurisdictional arguments are not proper. There is no jurisdictional bar to either Amazon's or the Intervenors' complaints. The Court

GRANTS Amazon's motion for summary judgment. Amazon has shown a right to obtain declaratory relief given that the DOR's information requests run afoul of the First Amendment and the VPPA. The Court therefore declares: to the extent the March Information Request demands that Amazon disclose its customers' names, addresses or any other personal information, it violates the First Amendment and 18 U.S.C. § 2710, only as long as the DOR continues to have access to or possession of detailed purchase records obtained from Amazon (including ASIN numbers).

The clerk is ordered to provide copies of this order to all counsel.